## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 23-cr-73 (CKK)** |
| | : | |
| **MARVIN BUSSIE (9),** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM
## IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that Defendant Marvin Bussie be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(C) (Controlled Substances Act offense) and 18 U.S.C. § 3142(f)(2)(A) (Serious Risk of Flight). There is a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the Defendant's appearance in this case and otherwise protect the community, pursuant to 18 U.S.C. § 3142(e)(3)(A).

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

## APPLICABLE LAW

Pursuant to 18 U.S.C. § 3142(e)(3)(A), there is a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the Defendant's appearance in this case and otherwise protect the community. The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). For a detention decision based upon risk of flight, the government only need

prove by a preponderance of the evidence that there are no conditions or combinations of conditions that will assure the defendant's appearance as required. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986). Furthermore, the government may present evidence by way of a proffer at a detention hearing. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

In considering whether there are conditions of release that will reasonably assure the safety of any other person and the community, and the appearance of the defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, along with the applicable rebuttable presumption, the government respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community or the Defendant's appearance at future proceedings.

## **BACKGROUND**

On May 18, 2023, a federal grand jury returned a superseding indictment against Defendant Marvin Bussie, among others, charging him with conspiracy to distribute more than 400 grams or more of a mixture and substance containing fentanyl (from January 2021 to the present). At present, twelve members of the charged conspiracy have been apprehended, including the Defendant, and each are detained pending trial.

## I.    **The Overdose Death**

The genesis for this investigation is the overdose death of a young woman in the District of Columbia. On January 18, 2022, a three-count indictment was returned against defendants Larry and Justice Eastman, charging them with conspiracy to distribute fentanyl; distribution of fentanyl

resulting in serious bodily injury; and distribution of fentanyl resulting in the death of a victim in Case No. 22-cr-22-CKK. The charges relate to the November 2020 overdose resulting in serious bodily injury and April 2021 overdose death of a female victim due to fentanyl toxicity. The defendants in that related case, Larry and Justice Eastman, pled guilty to Count I of their indictment, which is the fentanyl distribution conspiracy, and were sentenced to 140 months' imprisonment and 37 months' imprisonment, respectively, by District Judge Colleen Kollar-Kotelly on June 15, 2023.

## II.    The Broader Conspiracy

On March 9, 2023, a federal grand jury returned an indictment against defendants Craig Eastman (younger sibling to both Larry and Justice Eastman), Charles Taylor, and Hector Valdez in Case No. 23-cr-73-CKK. Evidence uncovered during the investigation of Larry and Justice Eastman indicated that Craig Eastman and his associate Charles Taylor were flying out to Los Angeles to acquire fentanyl-laced pills from their Los-Angeles-based supplier, Valdez. By March 22, 2023, Craig Eastman, Taylor, and Valdez were all in custody, and each of them are presently detained pending trial.

On April 6, 2023, the indictment was superseded to include, among others, Raymond Nava Jr. and Max Carias Torres. Both Torres and Nava are California-based upstream suppliers to Valdez. On April 26, 2023, both Torres and Nava were arrested in Los Angeles and are also detained pending trial.

## III.   Bussie and the Second Superseding Indictment

A second superseding indictment was returned on May 18, 2023, for, among other defendants, Bussie. The Defendant's role in the conspiracy is that he functions as a D.C.-area-based distributor of fentanyl-laced counterfeit oxycodone pills who was acquiring his supply from

co-defendant Valdez in Los Angeles. Evidence against the Defendant is overwhelming, and it includes both physical seizures and electronic communications.

In terms of physical seizures, on October 19, 2022, Bussie attempted to fly out of Los Angeles to Dulles. As he was going through TSA screening at LAX, his baggage was flagged for secondary screening. During secondary screening, Bussie ran out of the terminal. He left behind not only his baggage, but his passport, phone, and money. Inside Bussie's bag were assorted candy boxes and wrappers that were stuffed with nearly 10,000 (over 1kg) fentanyl-laced pills.







Shockingly undeterred and foolhardy beyond measure, the Defendant continued to acquire fentanyl pills. Just a month later, on November 8, 2022, FedEx flagged a suspicious package. As can be seen in the photographs below, the package had an exterior label addressed to Waldorf, MD, a phone number of 470-548-3899, and a sender address from Monterey Park, CA. Inside the package were Vans shoes that contained approximately 600 grams of fentanyl-laced pills.





A controlled delivery of the package and a search pursuant to a warrant was conducted at the Walford address the same day.  Inside the apartment were two people.  A search of the phone of one of these people revealed that this person communicated about the arrival of the package with the number 470-548-3899, which is the same number on shipping label.  That number was saved as "Marvin" in the phone.  As a result, a warrant was issued for Bussie's arrest.  On April 4, 2023, Bussie was arrested inside an apartment in Upper Marlboro, MD. Also located in the apartment was an associate of the Defendant.  A search of the apartment yielded a disassembled Glock 27 handgun with 15 .40 caliber rounds in a 22-round capacity magazine as well as a cellphone, which was subsequently identified as belonging to Bussie.  That phone was searched pursuant to a warrant.

In terms of electronic evidence, Bussie's phone contains conversations between him and numerous codefendants about acquiring pills.  For example, his conversations with Carr-Maiden show that the Defendant played a leadership role, directing and instructing Carr-Maiden as to how to avoid detection by law enforcement.  He specifically instructs Carr-Maiden to get candy boxes, the same sort of packaging that he would be caught with a month later in LAX.  Indeed, in some of the messages, Bussie warns Carr-Maiden about losing "my shit" and how Carr-Maiden would need to reimburse him if that were to happen, setting up the hierarchy that Carr-Maiden functioned as Bussie's mule.  Bussie is in green, and Carr-Maiden is in blue.[1]



le

---

[1] Co-Defendant Valdez' nickname is "Curl," or "Little Curl."



**+12022093140**
U only got carryon right
9/24/2022 2:56:08 PM(UTC-4)
Sources (1)

**SMAYNO**
I'm putting the shit under the plane on me
9/24/2022 2:56:23 PM(UTC-4)
Sources (1)

**SMAYNO**
I ain't getting bagged with this stuff
9/24/2022 2:56:33 PM(UTC-4)
Sources (1)

**+12022093140**
Brah what
9/24/2022 2:56:50 PM(UTC-4)
Sources (1)

**+12022093140**
N how is u gonna get bagged ?
9/24/2022 2:57:10 PM(UTC-4)

**SMAYNO**
I'm not walking through the machine the last two times I put it under that's what I'm doing bra
9/24/2022 2:57:22 PM(UTC-4)
Sources (1)

**SMAYNO**
It's to many
9/24/2022 2:57:28 PM(UTC-4)
Sources (1)

**SMAYNO**
Anything over 5000
9/24/2022 2:57:35 PM(UTC-4)
Sources (1)

**SMAYNO**
I put under
9/24/2022 2:57:39 PM(UTC-4)
Sources (1)

**+12022093140**
Rd and if you lose it u gotta pay im just saying bra
9/24/2022 2:57:44 PM(UTC-4)
Sources (1)

**SMAYNO**
I got a whole bag of clothes
9/24/2022 2:59:06 PM(UTC-4)
Sources (1)

**SMAYNO**
???
9/24/2022 2:59:11 PM(UTC-4)
Sources (1)

**+12022093140**
So thats how u did it last 2 times?
9/24/2022 2:59:11 PM(UTC-4)
Sources (1)

**SMAYNO**
Yes
9/24/2022 2:59:17 PM(UTC-4)
Sources (1)

**+12022093140**
Rd bra ,
9/24/2022 2:59:23 PM(UTC-4)
Sources (1)

**+12022093140**
Then if my shit gone i know u not going give me 7000 so wtf im do
9/24/2022 2:59:55 PM(UTC-4)

9



Additionally, messages confirm Bussie's involvement in the October and November 2022 airport and FedEx incidents. The below text messages between Valdez and Bussie shows Bussie and Valdez coordinating plans and Bussie (in green) sending his boarding pass to Valdez. The boarding pass Bussie sends Valdez is of a flight on October 18 that he ultimately did not board. As noted above, Bussie fled from LAX the next day, October 19.





**Washington to Los Angeles**

**UA 667**          ON TIME

**9:00 am**                          **11:41 am**
IAD  – – – – – – – – –  5h 41m  – – – – – – – – –  LAX
Washington, DC                          Los Angeles, CA
Tue, Oct 18, 2022                          Tue, Oct 18, 2022

**Flight details**                               ⌄

As for the November 2022 FedEx offense, Bussie texts Valdez an address for Valdez to ship the pills to.  Later on, Valdez sends Bussie a photo of the receipt, complete with a tracking number for the package he just mailed out.  The address provided by Bussie, as well as the tracking number on the receipt, all match the seized FedEx package that contained the fentanyl pills.





Finally, ledgers were located in the notes section of Bussie's phone, which spell out some of the pills and amounts he sold to others.  Notably, the ledger names two of Bussie's codefendants, "markddog" (Marcus Brown) and "drac" (Andre Edmond).

| ↓ Creation time | Modification Time | Last Modifier | Title | Body |
|---|---|---|---|---|
| 1/29/2022 11:48:40 AM(UTC-5) | 1/29/2022 11:49:08 AM(UT... | | markddog pills : 90+78 | markddog pills : 90+78 |
| 10/11/2021 7:28:50 PM(UTC-4) | 10/11/2021 7:29:02 PM(UT... | | Pills | Pills  jay - 610  drac - 1000 |

## **ARGUMENT**

I.    **The Defendant Should Be Detained Pending Trial Because He Poses a Danger to the Community and Risk of Flight**

In light of the nature and circumstances of the offenses charged, the weight of the evidence against the Defendant, the Defendant's criminal history and characteristics, and the dangers to the community posed by the Defendant's release, the Defendant cannot overcome the presumption that he is a danger to the community and a risk of nonappearance. To the contrary, these factors establish that the presumption is correct.

A.    **The nature and circumstances of the offense**

The nature and circumstances of the charged offenses weigh in favor of detention. The grand jury found probable cause to believe that the Defendant engaged in a conspiracy to distribute more than 400 grams of fentanyl, dating back to January 2021. At this point in the opioid epidemic, it is common knowledge that fentanyl kills. According to the DEA, "fentanyl is a Schedule II controlled substance that is similar to morphine but about 100 times more potent. . . . Because of its potency and low cost, drug dealers have been mixing fentanyl with other drugs including heroin, methamphetamine, and cocaine, increasing the likelihood of a fatal interaction. . . . Two milligrams

of fentanyl can be lethal depending on a person's body size, tolerance and past usage."[2] According to the CDC, overdose deaths in the United States continue to rise, with more than 80 percent of such deaths attributed to synthetic opioids, primarily fentanyl.[3] In 2021, the United States set a record high, with drug overdose deaths toppling 100,000 and fentanyl causing nearly two-thirds of these deaths.[4] According to Howard University Hospital, the District of Columbia suffers close to 400 opioid related deaths per year—contributing to the third highest opioid mortality rate in the country with 34.7 deaths per 100,000 persons compared to the national average of 14.6 deaths.

Here, the Defendant was dealing fentanyl, which is made worse by the fact that it was disguised and passed off as legitimate oxycodone. Further, the Defendant's text messages suggest that he knew the pills he was requesting from his California-based supplier and then redistributing in the Washington D.C. community were not legitimate, and yet he continued to acquire and distribute these dangerous substances to the community. This factor weighs in favor of detention.

### B. The weight of the evidence against the Defendants

The weight of the evidence against the Defendant is extremely strong. As laid out in the factual background, communications and seizures clearly show the Defendant trafficking fentanyl. Just in terms of physical seizures, there are over 10,000 pills attributable to the Defendant. Adding in the Defendant's communications about acquiring additional pills, the Defendant trafficked tens if not hundreds of thousands of pills. This factor weighs in favor of detention.

### C. The history and characteristics of the Defendants

The circumstances surrounding the Defendant's arrest strongly support detention. At the time of the filing of this memorandum, there is no Pretrial Services Report. That said, that the

---

[2] https://www.dea.gov/resources/facts-about-fentanyl
[3] https://www.cfr.org/in-brief/us-fentanyl-crisis-what-know
[4] https://www.cnn.com/2021/11/17/health/drug-overdose-deaths-record-high/index.html

Defendant continued to traffic fentanyl even after his October 2022 airport incident shows his sheer disregard for the law.  This fact weighs in favor of detention.

### D. The nature and seriousness of the danger to any person or the community posed by the person's release

The fourth factor—the nature and seriousness of the danger to any person or the community posed by the person's release—also weighs in favor of detention. The Defendant is accused of conspiring to distribute fentanyl into the Washington D.C. community, with two seizures from the Defendant alone accounting for over 10,000 pills. The Defendant's release thereby poses both a physical danger to the community and the unlikelihood that the Court can fashion adequate conditions of release pending trial: by his own conduct, the Defendant has displayed to the Court that he will continue his drug trafficking even after being nearly apprehended by law enforcement. As previously stated, fentanyl is now the leading cause of overdose deaths in the United States, which hit a record high in 2021. Accordingly, the release of the Defendant would pose a serious danger to the community.

<u>**CONCLUSION**</u>

For the reasons noted above, the government respectfully submits that clear and convincing evidence establishes that there are no conditions or combinations of conditions of release that will reasonably assure the safety of any other person and the community, and by preponderance of the evidence that the Defendant is a serious flight risk. Accordingly, the government respectfully requests that the Court grant the government's motion to detain the Defendant pending trial in this case.

Respectfully submitted,

MATTHEW M. GRAVES

United States Attorney
D.C. Bar Number 481052

_/s/ Andy Wang_
ANDY WANG
Assistant United States Attorney
D.C. Bar No. 1034325
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Andy.wang@usdoj.gov
202-870-4940