UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : Criminal No. 23-cr-73 (CKK) |
| MARVIN ANTHONY BUSSIE (9), | : |
| Defendant. | : |

**GOVERNMENT'S SUBMISSION OF ELEMENTS OF OFFENSE AND PROFFER OF EVIDENCE IN SUPPORT OF DEFENDANT'S PLEA OF GUILTY**

I.   Summary of the Plea Agreement

Defendant Marvin Anthony Bussie agrees to admit guilt and enter a plea of guilty to the ~~Superseding Information~~ [handwritten: Count 1 of the fourth superseding Indictment] charging one count of Conspiracy to Distribute and Possess with Intent to Distribute 400 Grams or More of a Mixture and Substance Containing a Detectable Amount of Fentanyl, in violation of Title 21, United States Code, Section 846.

[handwritten margin notes: MB, PR, BFM]

II.  Elements of the Offense

Count One of the Fourth Superseding Indictment charges that from on or about August 2020 to the date of his arrest, the Defendant conspired with others, including all of the other defendants listed in the indictment, to distribute and possess with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl. The essential elements of the offense of conspiracy to distribute and possess with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl are:

(1)   That an agreement existed between two or more persons to commit the crimes of distribution and possession with the intent to distribute a controlled substance, in particular, a mixture and substance containing a detectable amount of fentanyl;

(2)   That the defendant intentionally joined in that illegal agreement; and

(3)   The amount of said mixture and substance, which includes the reasonably foreseeable conduct of all the members of the conspiracy, was 400 grams or more.

The offense of violating 21 U.S.C. § 846, by conspiring to violate federal narcotics laws, does not include as an element, the commission of an overt act in furtherance of the conspiracy. *United States v. Pumphrey*, 831 F.2d 307, 308-09 (D.C. Cir. 1987).

III.  Penalties for the Offense

The penalty for conspiring to commit a narcotics offense, in violation of 21 U.S.C. § 846, is the same as that prescribed for the substantive offense, "the commission of which was the object of the . . . conspiracy." In this case, the penalty is the same as for a violation of 21 U.S.C. § 841(b)(1)(A)(vi), which is:

(A)   a term of imprisonment of not less than 120 months (10 years) and not more than life;

(B)   a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $10,000,000;

(C)   a term of supervised release of not less than five years; and

(D)   a special assessment of $100.

The United States Sentencing Guideline § 5E1.2 permits the Court to impose an additional fine to pay the costs of imprisonment and any term of supervised release and/or probation.

IV.  Brief Statement of the Facts

The following statement of facts does not purport to include all of the Defendant's illegal conduct. It also does not purport to be an inclusive recitation of everything that the Defendant heard, knew, or witnessed concerning the illegal activities of himself or others. The limited purpose of the foregoing statement of facts is to represent sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea as to Count One of the Fourth Superseding

Indictment.

Had this case gone to trial, the Government's evidence would prove the following beyond a reasonable doubt:

1. From beginning in or about August 2020 to April 4, 2023, Defendant Marvin Anthony Bussie conspired to, and did in fact, distribute and possess with intent to distribute a mixture and substance containing a detectable amount of fentanyl, a Schedule II narcotic drug-controlled substance. The amount of said mixture and substance, including the reasonably foreseeable conduct of all the members of the conspiracy known to the Defendant, was 4-12 kilograms.

2. Specifically, the Defendant participated in a fentanyl trafficking conspiracy whose purpose was to distribute fentanyl from Southern California to destinations throughout the United States, including to the District of Columbia.

3. The Defendant entered into this conspiracy after he was introduced to a Los Angeles-based drug trafficker, who was a distributor of fentanyl-laced counterfeit oxycodone pills. The Defendant was introduced to the Los-Angeles-based trafficker by D.C.-based co-conspirators of his.

4. The Defendant's role in this conspiracy was to travel to Southern California in order to purchase fentanyl-laced counterfeit oxycodone pills from the Los Angeles-based trafficker and then bring those pills back to the District of Columbia. The Defendant collaborated with D.C.-based co-conspirators of his.

5. Ledgers and communications obtained over the course of the conspiracy further indicate that the Defendant worked in conjunction with his D.C.-based co-conspirators for the acquisition and redistribution of fentanyl-laced counterfeit oxycodone pills. For example, ledgers obtained from the Defendant's phone indicate that the Defendant and some co-defendants shared or

otherwise owed each other pills and/or money in connection with fentanyl trafficking at various points during the conspiracy.

6. In transporting the pills back to the District of Columbia, the Defendant and his co-conspirators utilized two primary methods: smuggling the pills while concealed in luggage and/or personal carry-on items, or alternatively, utilizing commercial mail carriers to ship the pills to the District of Columbia.

7. Through these actions, the Defendant conspired with the Los Angeles-based trafficker to purchase bulk, distribution-level quantities of fentanyl-laced counterfeit oxycodone pills. The Defendant then conspired with his D.C.-based co-conspirators to redistribute and sell fentanyl-laced counterfeit oxycodone pills in and around the District of Columbia for profit.

8. For example, on October 19, 2022, after meeting with the Los-Angeles-based trafficker in Los Angeles to purchase bulk quantities of fentanyl-laced counterfeit oxycodone pills, the Defendant attempted to fly from Los Angeles International Airport to Washington Dulles International Airport. In the Defendant's baggage was approximately 1.2 kilograms of fentanyl-laced counterfeit oxycodone pills, which were hidden in various candy boxes and packages. After the Defendant's baggage was flagged for secondary screening by Transportation Security Administration officers at LAX, the Defendant fled, abandoning his narcotics, passport, and other personal items.

9. After the Defendant's October 2022 encounter at LAX, the Defendant shifted methodology for his importation of fentanyl pills into the District of Columbia. The Defendant collaborated with D.C.-based co-defendants smuggle fentanyl-laced counterfeit oxycodone pills back to the District of Columbia. Alternatively, the Defendant conspired with the Los-Angeles-based trafficker to ship packages containing pills to addresses in and around the District of Columbia.

10. For example, on October 28, 2022, the Defendant provided the Los-Angeles-based trafficker with the Waldorf, Maryland address of 2739 Hadley Drive to ship fentanyl-laced counterfeit oxycodone pills. Several days later, on November 8, 2022, FedEx flagged a package addressed to 2739 Hadley Drive as suspicious. A controlled delivery of the package was performed, and inside was a pair of shoes and approximately 600 grams of fentanyl-laced counterfeit oxycodone pills hidden in two separate baggies inside of the shoes.

11. Communications evidence, as well as physical seizures, indicate that the Defendant coordinated with the Los-Angeles-based trafficker and his D.C.-based co-conspirators and others to bring hundreds of thousands of fentanyl-laced counterfeit oxycodone pills into the District of Columbia.

12. The Defendant agrees that he personally has read, or had read to him, all of the Indictments in Case No. 23-cr-73 (CKK), including the allegations and charges against the Defendant and his co-defendants in those Indictments. The Defendant agrees that he does not have information to dispute or disprove those allegations and charges against him, nor his co-defendants, set forth in the Indictments in any way.

Sincerely,

Matthew M. Graves
United States Attorney
D.C. Bar No. 481052

By:   /s/ Matthew W. Kinskey
      Matthew W. Kinskey
      Solomon S. Eppel
      Assistant United States Attorneys

## Defendant's Acceptance

I have read each of the pages that constitute the Government's proffer of evidence and have discussed it with my attorney, Brian Keith McDaniel. I fully understand this proffer and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in my plea agreement.

I am satisfied with the legal services provided by my attorney in connection with this proffer and my plea agreement and matters related to it.

Date: 2-23-24

Marvin Anthony Bussie
Defendant

## Attorney's Acknowledgment

I have read each of the pages that constitute the Government's Proffer of Evidence, reviewed them with my client, Marvin Anthony Bussie, and discussed the provisions of the proffer with him fully. These pages accurately and completely set forth the Government's proof, as I understand it.

Date: 2/23/24

Brian Keith McDaniel
Counsel for Defendant
Marvin Anthony Bussie

6