IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | Criminal No. 23 – 073 - 16 (CKK) |
| | : | |
| | : | |
| RONTE  GREENE | : | |
| | : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

**INTRODUCTION:**

The defendant, Ronte Greene, through undersigned counsel, hereby submits the following memorandum in support of sentencing.  The defense requests that the Court impose a below-guideline prison sentence of 84 months, along with alternative punishment to be served during the period of supervised release.   Specifically, the defense recommends that the Court impose lengthy period of supervised release, and can include a period of home detention during supervised release so that a period of confinement will continue, but under conditions that will enable him to more quickly take advantage of an employment opportunities available to him. Such an approach will facilitate a more successful rehabilitation and re-entry in the community. In addition, the Court can impose a period of community service so he can give back to the community in a productive way.  The home confinement and community service conditions, along with the lengthy period of supervised release, will provide a more balanced sentence for an individual like Mr. Greene, who slid off the rails during COVID, after being a successful, hard-working young man for more than a decade – starting as a pre-teen helping his father in his barber shop and then getting numerous jobs when he was old enough to work.

Although counsel's recommendation is below the applicable guideline range, the recommended sentence includes a substantial prison term and significant alternative

1

punishments, while at the same time it more effectively balances the seriousness of the offense

with the need to also provide needed corrective and rehabilitative treatment in a most  effective

manner for Mr. Greene.  It recognizes that he had a very lengthy uninterrupted period of

academic and work successes as a young man before the COVID pandemic struck and

circumstances, including a period of opioid abuse, sent him seriously off track leading to his

involvement in the instant offense.

       Counsel believes that Mr. Greene's case is different than the cases of most of the drug

defendants that appear in this court.  He is a high school graduate and has some college

coursework and training.  More significantly, he has a very lengthy employment history,

particularly for his age.  Over the years he has demonstrated a very strong work ethic – starting as

a teenager and carrying over into his twenties.  In addition, he has shown a great deal of character

and responsibility in his dealings at home, at work, and in the community.  In fact, even though

the offense conduct spanned a period of time, it seems to have been quite aberrational when

viewed in light of his character, background, education, and work history prior to the offense.  The

numerous character letters submitted on his behalf leave little doubt that his involvement in the

offense was not consistent with the Ronte Greene they know.  And the letters also leave no doubt

that he has great potential and the ability and mindset to successfully put this matter behind him.

       In light of aberrational nature of the offense conduct, counsel submits that one of the

important sentencing goals should focus on the need for correctional and rehabilitative treatment

in the most effective manner.  The community has a substantial interest in seeing someone like

Mr. Greene come out on the other side of this case strong and successful.  A prison term that is

longer than necessary, however, will be counter-productive to that goal, as it will cause a great

deal of unnecessary institutionalization.  Thus, counsel strongly believes that the key to the

sentencing in his case is finding the balance between punishment and effective rehabilitation and

corrective treatment.

In sum, counsel submits that the totality of the circumstances in Mr. Greene's case should tip the scale in favor of a slightly shorter prison sentence, followed by alternative punishment during the period of supervised release. Mr. Greene's involvement in the offense was triggered by an unusual set of circumstances. After working nearly 7 days a week for years, he became unemployed when the once-in-a-lifetime pandemic struck. His background and history, as well as his post-arrest responsibility, clearly show both that he inexplicably got off track and that he has the potential and desire to atone for his mistakes and get his life back on course. Thus, counsel implores the Court to impose a below guideline prison term, and make up for it with a period of home detention and community service during his period of supervised release.

Significantly, the defense approach will enable him to serve a substantial prison term, but will also permit him to return to the community a little earlier, when his employment relationships will still be meaningful. [1]    That is the formula best designed to punish Mr. Greene while at the same time facilitating his successful return to being the hard-working and productive young man he had been for many years. Such a result will best serve the interests of both the defendant and the community. The government's recommendation, on the other hand, focuses mainly on the seriousness of the offense, while failing to adequately balance the other factors in Mr. Greene's case - perhaps because they did not have counsel's opportunity to deal with him, his family, and work community over the past 18 months.

Wherefore, counsel submits that the recommended sentence is sufficient, but not greater than necessary, to accomplish the goals of sentencing in Mr. Greene's case, and best satisfies all of the sentencing factors in his case. It provides just punishment and adequate deterrence, while

---

[1]   The defendant has a standing offer from his supervisor when he worked for AT&T to offer employment and/or assist in obtaining employment when he returns to the community. *See,* Exhibit 2, Character Letter from Robert Greene (not related to defendant).

also balancing the need to get Mr. Greene back to being a hardworking, law-abiding, tax-paying

member of the community. Moreover, since Mr. Greene has no history of violence, a downward

variance is reasonable and appropriate.  In support of Mr. Greene's request counsel is submitting a

letter from the defendant, a letter from his former supervisor at AT&T, a certificate of

achievement, and numerous other character letters on his behalf – letters that universally confirm

counsel's characterization of his background, history, and character.  [2]


## PRE-SENTENCE REPORT AND ADVISORY GUIDELINE RANGE

Mr. Greene was arrested on November 15, 2023 and has been detained continuously

since that date.  After obtaining discovery and resolving an issue with the government regarding

his criminal history points, the defendant entered into a plea agreement with the government.

On February 27, 2025, Mr. Green appeared before Your Honor and entered his guilty plea.  He

pleaded guilty to a Superseding Information charging him with conspiracy to distribute and

possess with intent to distribute 40 grams or more of a substance containing a detectable amount

of fentanyl in violation of 21 U.S.C. § 841(a) and (b)(1)(B).  The offense carries a 60 month

mandatory minimum,.

The parties agree that he is accountable for between 4 and 12 kilograms [3] , and that no

specific offense characteristics are applicable.  Accordingly, his base offense level is 34, and

total offense level is 31 after the adjustment for acceptance of responsibility.  [See, PSR ¶¶ 47,

102-112].   In addition, Mr. Greene is in criminal history category I, having 1 criminal history

---

[2]  Counsel also expects to be able to obtain and submit additional certificates he has earned from participating in programs while his case has been pending.  Counsel will submit any supplemental information as soon as possible.

[3]  Based on the deals that involved Mr. Greene it appears that he is responsible for a little more than four kilograms.

point.  [See, PSR ¶¶ 115-117] .  Thus his advisory guideline range is 108 to 135 months. [See,

PSR ¶¶ 48, 166]  Defendant reserved the right to request a sentence below the applicable

guideline range down to 60 months. [See, PSR ¶ 51]  There are no disputed issues in the PSR

for the Court to resolve.

According to the Judiciary Sentencing Information [JSIN], over the past five years the

average sentence of imprisonment for defendants with the same offense level and criminal

history category has been 83 months, and the median length has been 84 months. [See, PSR ¶

193]  For the reasons addressed in this sentencing memorandum, Defendant respectfully

submits that a below-guideline sentence of  84 months is fair, just, proportionate and consistent

with the sentences for other similarly-situated defendants [per the JSIN}.

**DEFENDANT'S RECOMMENDED SENTENCE BEST SATISFIES THE STATUTORY GOALS OF SENTENCING.**

   *a.   Introduction:*

As this Court is well-aware, 18 U.S.C. § 3553(a) "contains an overarching provision

instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to

accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007)

(quoting 18 U.S.C. § 3553(a)); *see also Holguin- Hernandez*, 140 S. Ct. 762, 766 (2020).  In

coming to a determination, the Court  must consider the kinds of sentences available and

sentencing range established under the sentencing guidelines, but "may not presume that the

Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 49-51 (2007).  Rather, the

Court must treat the Guidelines "as one factor among several" that § 3553(a) requires the court

to consider.  *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).  Once the Court calculates the

sentence that the Guidelines recommend, the Court must then "make an individualized

assessment," considering the remaining factors set forth in § 3553(a). *Gall*, 552 U.S. at 50.

In addition, Section 3582 of Title 18 provides that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, **recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.** (Emphasis added).

Pursuant to 18 U.S.C. § 3553(a)(2), the Court, in determining the particular sentence to be imposed, shall consider, *inter alia* - (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Consistent with the plea agreement, the defendant readily acknowledges the kind of sentence in this case must include a term of imprisonment of at least 60 months. The more difficult determination is how long that sentence should be, and whether a below guideline range sentence, along with alternative punishment, is sufficient but not greater than necessary to accomplish the individualized sentencing goals in Mr. Greene's case. Counsel respectfully submits that consideration of the totality of the factors under § 3553(a) suggest that a below-guideline sentence of 84 months is more than sufficient, and best accomplishes the overall goals of sentencing in his case.

### b. *Defendant's Background, History And Characteristics.*

Ronte Greene's history and characteristics are largely positive, and support the request for a below-guideline sentence. Mr. Greene is a 29 year old man, who has demonstrated that he possesses a very strong work ethic and a great deal of potential. Although his parents never

married, and separated when he was very young, they provided a relatively stable environment

for him – as he spent time with both parents.  He went to school in the Maryland suburbs,

graduating from Oxon Hill High School in 2013.  He was actively involved in sports, playing in

scholastic and recreational football and basketball.  During his elementary and junior high

school years he participated in sports and other activities through the Boys and Girls Club of

Maryland.  In high school he continued being actively involved in football and basketball.

During his high school years he also participated in the ROTC program and always had a job.

A few years after high school he enrolled in the "Year Up Program" in Alexandria, Virginia,

receiving Information Technology, Professional Development, and COMP TIA A+

certifications.

At the same time that Ronte was getting his education, he obtained and maintained

employment to help pay for that education.  He started working at Six Flags Amusement Park

while he was still in high school, and worked there until COVID struck.  In the early years it

was a seasonal summer job, but he still often worked 12 hour days.  A couple years after

graduating high school he was promoted to a supervisory position at Six Flags and he began

working year round (except for December and January when there was no work for him).

During December and January he obtained seasonal holiday work at the Ice Rink at Gaylord

National Resort.  When Six Flaggs was open he would normally work 12+ hour days, and

during the off-season he would often work 10 hour days.  When he was not working shifts at

Six Flaggs seven days a week, or when his schedule permitted, he took on additional work,

obtaining employment with Maximus Federal Services and later AT&T.   Counsel does not

recall a defendant who had more work hours and experience in his teens and early twenties than

Ronte Greene.

Sadly, the combination of the death of a close childhood friend and the lengthy period of

unemployment due to COVID seemed to derail Mr. Greene from the extremely solid path to

success he had been on until that time.  His childhood friend was a prominent local football

standout who earned a scholarship to play football at Wagner College, and was studying for his

MBA.  Mr. Greene and his friend remained good friends, and he was crushed by the news and

images of his friend's death.  According to reports from Fox 5 and WJLA Channel 7, the friend

was shot in front of his fiance's (and baby's mother) home by a jealous ex-boyfriend who was

arrested and eventually convicted for the murder.

The untimely death of his friend, coupled with the extended period of unemployment,

turned out to be very unhealthy mix for the defendant.  He had a lot of time on his hands, which

was not normal for him.  He was constantly reminded of his friend's death as the case was

delayed due to COVID and eventually went to trial in 2022.  He struggled with his feelings of

grief and depression.  He began filling his time with unhealthy and dysfunctional activities.  He

began going to clubs and casinos, partying with friends, and abusing marijuana and other

substances.  Like most people in that situation, he was oblivious to the transition from hard-

working, productive person to a person with a marijuana and opioid addiction.  That transition

led him down a path that has him before this Court, and resulted in his only other conviction in

P.G. County, Maryland.  [4]

---

[4]  Mr. Greene has two other Virginia arrests, but counsel notes that those cases were quickly
dismissed because authorities realized he had not been involved in criminal conduct.   The first
case involved his arrest after his car was involved in an incident with police and contraband was
recovered from the vehicle.  His attorney explained, however, that Mr. Greene had reported the car
stolen in Maryland days earlier in Maryland and the BWC from the Virginia incident confirmed
that the defendant was not the person fleeing the vehicle.  The second arrest involved his presence
as a passenger in a car with a friend who had borrowed it from his sister.   When the friend did not
promptly return his sister's vehicle or return her calls, she apparently became upset and reported
the borrowed car stolen.  The police arrested the driver and Mr. Greene but the case was dismissed
soon thereafter.  All of the other matters involved traffic offenses.

To Mr. Greene's credit, he reacted appropriately to his arrest and prosecution. He quickly acknowledged his involvement in the offense and authorized counsel to begin negotiating a plea agreement, which took much longer than usual due to a number of issues counsel had to work through. He was diagnosed with opioid dependency and prescribed suboxone at the jail. During his time at the jail he has made the effort to be productive. He has tried his best to take advantage of any programming available there. One of his first requests was to participate in the Residential Substance Abuse Treatment Program (RSAT) but he never got off the long waiting list. [5] Instead, he obtained a "detail" job at the jail and continued to request programs as they became available. He has completed online courses in Critical Thinking; Business Ethics; Guide to Drug and Alcohol Abuse; The Reality of Change and Recovery; Beginning a New Career; and Career Opportunity for Edwins Restaurant. He is currently participating in the Substance Use Disorder Program ("SUD"). He is scheduled to complete the program in August, and was recently asked to be a mentor in the program as long as he remains at the D.C. Jail.

The past 18 months have been extremely enlightening for him, and will serve him well as he strives to continue to put himself back on a track to success. Fortunately, he has the strong support of his friends and family, which will be a great asset for him when he re-enters the community. They knew the Ronte Greene from the first 26 years of his life, and were universally shocked by his arrest. They are a solid support network of support for him, and will continue to be there for him when he returns to the community. Some of the letters unequivocally offer employment based on his prior work ethic and history, and others pledge to

---

[5] Counsel spoke with Ms. Voss, the Treatment Specialist with the RSAT program. She informed counsel that Mr. Greene has been on the waiting list, but also confirmed that space is very limited and that it was unlikely that he would move to the top of the waiting list before he heads to the BOP.

be available for any support and/or mentorship that might be needed.  He currently plans to live

with his mother and stepfather when he is released which rounds out a solid release plan.

Counsel is confident that the Court does not have to worry about any transgressions by Mr.

Greene when he is able to return to the community.  As he tells the Court in his letter, he is

committed to returning to the "better life" and to giving back in a positive way to the

community – meaning the values and work ethic instilled in him by his parents.  Counsel

believes he will do just that.

The character letters submitted on his behalf paint a well-deserved picture of a good

person who got off track.  They describe a person who had been a stellar citizen and member of

the community as an adolescent and young man.  Virtually all of the letters state explicitly or

implicitly that his involvement in this case is out of character for him.  As his stepfather writes,

they know him to be a "caring, giving, hardworking young man".  He has been "committed to

work" since he was a teenager; and "takes pride in being dependable and responsible, and he

brings strong work ethic to everything he does."

Having heard from so many individuals who felt compelled to write in support of Mr.

Greene, counsel believes that the government's recommendation misses the mark as it does not

properly balance the other sentencing factors in this case, particularly the defendant's background,

history and characteristics..  Instead, the government focuses almost exclusively on the nature of

the offense.  [6]  Based upon counsel's observations, as well as the letters submitted on Mr. Greene's

---

[6]  In addition, counsel believes the government's effort to inject recidivism issues is misplaced.
The government argues that the defendant's conduct after his Maryland arrest in May 2022 shows a
lack of deterrence which needs to be addressed. [Govt Memo at pp. 8-9]  However, the government
has some of the facts wrong, and therefore the argument is without merit.  Specifically, the
government mistakenly makes the point that the defendant was not deterred following his
Maryland arrest because on June 17, 2022, he indicated that he was willing to continue drug
trafficking as soon as the court-ordered ankle monitor was removed. [ Govt Memo at p. 8]  The
problem with that analysis is that Mr. Greene was not on any GPS or ankle monitoring at the time.

behalf, it is evident that this prosecution has had the proper effect on him.  Since the day of his

arrest, he has taken the matter very seriously.  Counsel and his family have been able to observe his

adjustment and development over the past 18 months.  He assures the Court in his letter of his

intention to go back to his "better life".  He is working hard to put those mistakes successfully

behind him.   His current attitude and outlook suggest that his moral compass is reset, and that he is

not a risk to re-offend.

In sum, Mr. Greene's history and characteristics demonstrate that he is a good person,

without a history of violence.  He has exercised poor judgment and has made some terrible

mistakes.  However, his mistakes alone should not define him or establish his punishment.

Prior to those mistakes, he had made a very positive impact in the community and had built a

very strong record of achievement.  His record of accomplishments and hard work must be

properly considered as well, and it should impact the assessment regarding the type of sentence

that will give the defendant the best chance to successfully re-enter the community as a

productive, law-abiding citizen.  In other words, what sentence provides for needed

rehabilitation and corrective treatment in the most effective manner.

---

Thus, the statement did not have the meaning attributed to it by the government, and the argument should be disregarded.

Second, the government tries to muddy the waters for Mr. Greene, based on its suspicion that Mr. Greene may have possessed guns after his Maryland arrest. The government bases that on three photographs submitted.   However, by the government's own admission the photographs do not support the argument, as there is no evidence that the photographs were taken after the Maryland arrest; that the defendant ever possessed the apparent firearms; or that the apparent firearms were actually firearms.  In addition, the third photograph (with the emoji) seems to be a photograph from the internet, similar to countless photographs counsel has seen during the review of social media posts in other cases.

The Court is required to assure that information considered for sentencing is sufficiently reliable, and the government's arguments and photographs of apparent firearms falls far short . Thus, the Court should also not consider the government's argument regarding likely recidivism issues.

In short, his history and characteristics strongly suggest that a shorter prison sentence, coupled with alternative punishments, will best satisfy the sentencing factors in his case.

### c.    *Nature and Circumstances of the Offense and Types of Sentences Available.*

The offense is obviously very serious.  Yet it must still be balanced against the other sentencing factors when determining a sentence that is sufficient, but not greater than necessary to effectuate all of the goals of sentencing.  Counsel submits that there are a number of factors that tend to mitigate the nature, circumstances, and seriousness, of the offense.  According to the PSR, Mr. Greene played an average role, facilitating a few shipments from California to the D.C. area. The shipments he was involved with seem to put him on the very low end of the 4 to 12 kilogram guideline range, which makes the offense somewhat less serious than for others in that range. [7]  In addition, the average sentence according to the JSIN is 83 months, which together suggest that the defense recommendation is reasonable and proportionate.

Significantly, according to the people close to Mr. Greene, including family, friends, community  members, and employers, his foray into the drug trafficking arena seems to have been far out of character for him. As discussed above, Mr. Greene was something of a workaholic for nearly 10 years.  He had been accustomed to working long hours and having little free time.  The loss of a friend to gun violence, combined with the effects of COVID, turned out to be very dysfunctional for him.  While it is definitely not an excuse, it makes his substance abuse issues and

---

[7]  Furthermore, it appears that Mr. Greene could have been eligible for "safety valve" treatment if he had participated in a safety valve debriefing.  However, early in the case Mr. Greene was the subject of rumors on social media, in the community, and at the jail that he was cooperating. Counsel had to monitor and address those issues for several months.  As a result, he felt it would jeopardize his safety to participate in a safety valve debriefing, as the other defendants know what that entails.  If he were able to get safety valve treatment, he would have been entitled to an offense level reduction and a guideline range of 87 to 108 months.

downward slide more understandable.  Defendant recognizes that departures for aberrational

conduct are limited to offenses of a much more limited duration.  Nevertheless, it can be an

appropriate consideration for a variance, particularly when considered along with other factors in

the case.  *See e.g., United States v. DeRusse,* 859 F3d 1232 (10th Cir 2017) (authorized a *Booker*

variance to time served and was not constrained by U.S.S.G. § 5K2.20).    In this case, Mr.

Greene's involvement in the offense was significantly out of character and aberrational when

compared to his 10 year history of work and accomplishments prior to him experiencing the effects

of being unemployed during COVID.  In addition, Mr. Greene had a serious substance abuse

problem which significantly contributed to the offense. Thus, counsel submits that those factors

mitigate to some extent the nature and circumstances of his involvement in the offense, and the

totality of the factors supports the requested variance.

Counsel would also note that imprisonment is not generally an appropriate means of

promoting correction and rehabilitation.  Lengthy periods of imprisonment have the potential to

"do great harm – not only to those who are imprisoned, but also more broadly to families and

communities, and society as a whole."  National Research Council of the National Academies, *The*

*Growth of Incarceration in the United States, Exploring Casues and* Consequences, at p. 8 (2014).

While prison time can serve important sentencing goals, there is a point of diminishing returns with

lengthy prison sentences – a point where the sentence results in warehousing inmates longer than

necessary. Longer sentences also tend to result in designations to higher security facilities or

penitentiaries, which can be even more damaging.  Lengthy warehousing tends to further entrench

inmates in the prison system, and promote relationships necessary to survive under the difficult

conditions in prison.  The result is not conducive to getting a generally successful person back on

track.

When trying to strike the proper balance between the need for punitive prison time and the need for significant vocational, rehabilitative, and substance abuse treatment, it is worth noting that the defendant is not likely to get much help while in the custody of the Bureau of Prisons. Instead, those factors are likely to be implemented in a more effective manner under the strict supervision of the United States Probation Office, where the defendant will have the benefit of the superior resources and supervision by the United States Probation Office, which is far better equipped than the Bureau of Prisons to provide needed treatment and supervision Mr. Greene.

Counsel submits that the government's recommendation, on the other hand, fails to strike the proper balance. Mr. Greene has developed important employment connections through his hard work over a long period of time, and after an 84 month sentence there is a good chance those connections will be able to help him find employment. However, after a 120 month sentence, tit is less likely his connections will be able to help. Thus, imposing an 84 month sentence, while imposing home detention and other alternative punishment, makes great sense in this case. Simply put, as difficult as it is coming home from prison as a convicted felon, it makes sense to fashion a punishment that gives the defendant the best chance of getting successfully back on track after prison – a goal that is likely shared by the community.

Ronte Greene has been sincere, contrite, and remorseful since his arrest. His post-arrest adjustment demonstrates that he is on a good path forward. Thus, while the nature and circumstances of the offense suggest the need for a sentence of imprisonment, the totality of the factors supports the defense recommendation for a downward variance.

Case 1:23-cr-00073-CKK    Document 703    Filed 07/01/25    Page 15 of 17

d.  ***Need For Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Deterrence, and Needed Educational, Vocational, and Correctional Treatment in the Most Effective Manner, and Avoid Unwarranted Sentencing Disparities.***

For all the reasons discussed above, the defense recommendation for an 84 month sentence, along with a period of home detention, community service hours, and any other alternative punishment the court deems appropriate, is sufficient to provide just punishment, deterrence, and best addresses defendant's continuing need for vocational, correctional, and substance abuse treatment in the most effective manner. Mr. Green's actions since his arrest suggest that he is well on his way to reforming his behavior, and re-committing himself to family and community. First, he has done everything possible to improve himself, while being housed under the often very difficult conditions at the D.C. Jail. He got a work detail, took online classes, participated in jail programs, and is now participating and mentoring in the substance abuse program available to him. In addition, Mr. Greene made an early decision to accept responsibility for his misconduct, which is recognized as an important factor demonstrating that a person is ready for positive change and rehabilitation, and which also suggests a reduced risk of recidivism.

In addition, Mr. Greene's involvement in the offense is clearly related to his history of substance abuse during and following COVID, for which he needs treatment. A shorter prison term will get him under the supervision of the U.S. Probation Office sooner. Under Probation supervision, unlike BOP custody, he can expect his vocational and treatment needs to be addressed. Obviously, Mr. Greene must serve a period of imprisonment. Therefore, as here, when there is discretion in determining the length of the prison term and other the other conditions, and when there are specific rehabilitative and treatment advantages to a shorter prison term, then strong consideration should be given to the alternative sentencing scheme. Thus, rather than warehousing Mr. Greene for longer than necessary, counsel urges the Court to adopt the defense sentencing approach in this case and grant a modest variance, while imposing the recommended alternative

15

punishment. Such an approach in balancing the sentencing factors and in getting the defendant

back to being hardworkding, tax-paying, citizen.  *See,* 18 U.S.C. 3553(a)(2)(D).

**CONCLUSION**

Notwithstanding the seriousness of the offense, Mr. Greene has shown proper respect for

the criminal justice system; he has accepted responsibility; and he stands ready to accept the

consequences of his actions. He is well on his way to putting his life back on the proper track.

There has been an increased recognition in the criminal justice system that lengthy prison

sentences are not always the right answer.  There are cases in which a shorter prison sentence,

with alternative forms of punishment, can be both appropriate and better for both the defendant

and the community.  This is such a case.

Wherefore, counsel submits that the recommended 84 month sentence, along with the

other conditions, appropriately reflects the seriousness of the offense, promotes respect for the

law, provides deterrence, provides just punishment, and provides for continued vocational, and

rehabilitative treatment  in the most effective manner.

**BOP  RECOMMENDATIONS:**

Defendant respectfully requests a judicial recommendation that he participate in a

Residential Drug Abuse Program ("RDAP").  In addition, defendant is still considering possible

designations.  He expects to request that the Court recommend one or more BOP designations,

and will do that at or before the sentencing hearing.

Respectfully submitted,

/s/  *Howard B. Katzoff*
Howard B. Katzoff [Bar No. 348292]
717  D  Street, N.W.,  Suite 310
Washingon, D.C. 20004
(202) 783-6414
katzoffh@aol.com
Counsel for Ronte Greene

16

CERTIFICATE OF SERVICE

I hereby certify that this ___30th___ day of __June_____, 2025,  a copy of Defendant's

Sentencing Memorandum was filed and via the Electronic Court Filing System (ECF), causing a

copy to be served on government counsel.


 /s/ *Howard  B. Katzoff*_____
Howard B. Katzoff

17